Today's docket is the case of People v. Rachel Stewart We have Mr. Jordan Cohen, there you are again, for the state And we have Mr. Max Connor-Miller for the appellate And you may proceed when you're prepared to Let me just state that, I guess the obvious, that we only have two panel members But for the record, Justice Overstreet is not present with us because he's at a conference in Chicago But we'll be listening to the recording Thank you, yes My name is Jordan Cohen, I represent Rachel Stewart in this case Mrs. Stewart was convicted of burglary after she took files from the daycare center that she had recently been fired from The issue of this case is whether her intent to permanently deprive the daycare center of its files was proven beyond a reasonable doubt Even though all files were returned within two days Now this case is much more about poor communication than it is about someone who really had a criminal mindset So I'm first going to start with just the timeline because I think it's important, it can get confusing And it's important to establish the order that everything happened before we get into the argument too much And then I'll go through some of the definitions of the intent to permanently deprive and address the state's argument So first, Mrs. Stewart actually founded this daycare center She was the lead player in getting it off the ground And she worked there for three years and seemed to have no problems during that time Of course, at the end of that, she did get fired Mrs. Stewart had three kids who were all involved in various sports and activities that she was also involved in And she was a girl scout leader, she was busy Ultimately, it seems she was mostly fired because she was unable to keep up with the requirements of her job anymore It's not as though there was one specific reason, but she just could not fulfill her requirements She was told that she was fired by Pastor Zimmerman And the daycare center was part of a church, so that's why Pastor Zimmerman told her that she was fired And said that she was shocked or upset at the time, and she sort of just quickly grabbed some things and left Pastor Zimmerman also mentioned that if you have any... He told Mrs. Stewart, if you have anything you're missing, just let us know and we'll gather it for you and you can pick it up Of course, because most people, when they get fired, they would kind of collect their things and leave It seems that Mrs. Stewart sort of left quickly, and that's why Pastor Zimmerman said If you have anything you need, just let us know and you can come pick it up So this is why I say the case is about poor communication Because had Mrs. Stewart done that, had she just contacted Pastor Zimmerman and said, hey, I need these files I'm very confident that Pastor Zimmerman would have given her the files or made copies It would have been amicable, and we would not be here today Unfortunately, that's not what happened Instead of contacting Pastor Zimmerman, Mrs. Stewart contacted her cousin Shelby Who also worked at the daycare center to ask for the files And Shelby did not want to get in the middle of it, so she didn't get the files for her And then Mrs. Stewart took it upon herself to go take these files Now it's important that this is not an instance where she went in the middle of the night and she broke in a side window Mrs. Stewart went in broad daylight through the front door in opening business hours Actually during nap time for the kids So she's not trying to be discreet at all She just walks in, she takes files, and she leaves That very same day, Mrs. Stewart returns to the daycare center and she gives back a lot of the files And this is before the police are involved whatsoever So she already gives back many of the files I have a factual question about that Because I thought I read in your brief that she went and took some files back But she didn't see who she wanted to give them to And so she left again with the same files And then later on it said that she left some files So I'm confused about that Yes, Your Honor So it is a little confusing because there's a lot of different testimony about this But she went back and Patrick Zimmerman was not there at the time So she didn't interact with him at the time But she did drop off a bulk of the messages And then she also kept some files, not messages So that's not in dispute, that she did in fact leave some of the original I don't believe that is in dispute, Your Honor The fact that she left some files and she took some files back And the state even factors that into their argument as well So I don't think that's in dispute But she does have some files And that's why the police are ultimately called Because like I said, there's poor communication And the people at the Daycare Center, they don't know what's going on They didn't really hear from Mrs. Seward And so they call the police because there are some missing files And they just don't know what's happening So that's when Officer Cade gets the phone call And he goes to Mrs. Seward's house And this is when he tells Mrs. Seward that she will be arrested for trespassing If she returns to the Daycare Center And this is all the same day still So two days later, the files still have not been returned Officer Cade returns to her house But she was not home And the door was answered by her son Jacob, one of her sons  So she was not home at that time And her son just said, she's not home, she'll probably be back later So Officer Cade returned for a third time that night And again, this is two days after And she still wasn't home yet However, her husband was home and saw the files were in a box So this is when the husband gives the box of files to Officer Cade And this is two days after So Mrs. Seward was not home in the meantime here But the files were in a box And then Cade brought the files back to the Daycare Center And they all said, these files are completely returned And they signed a statement saying, we don't want Mrs. Seward to be charged with this They all returned within two days Now, I want to go to the definition of the intent to permanently deprive Because that is an essential element here that needs to be proven As part of theft, which had to be intended for burglary So there's four different definitions of permanent deprivation Only two of them are really applicable Which are the gift of the intent to defeat all recovery of the property by the owner Or deprive the owner permanently of the beneficial use of the property So, and we know from People v. Heisig, which is a case cited by the state That that intent is determined by the defendant's actions toward the owner's property So towards the very property that they took And so there's plenty of examples where defendants either destroy the property So like if she had shredded the files or they abandoned the property Or they seek a reward for the property Or they take the property to a pawn shop Or they just say they misplaced the property and don't come up with it Of course, none of those examples apply here Because she did not do any of those things There's also a distinction that I want to make between the intent to permanently deprive And the intent just to temporarily deprive So, there's these joyriding cases And one of them is in Ray Tab In which a defendant steals Or not, I'm sorry A defendant doesn't steal A defendant borrows someone's car without their permission And then drives that car and then gets hit by a telephone pole And so they were driving this car without permission And they couldn't And they did actually permanently deprive Because the car got hit by a telephone pole But this was still not burglary Was the telephone pole on a truck? Or did it run down the street and hit him? He was hit by a telephone pole? Or he, the car, hit a telephone pole? The car hit a telephone pole Because you said Did I say the telephone pole? He was hit by a telephone pole I'm sorry, Your Honor It fell out of the sky I don't know That's not what happened But, Your Honor, it was bad driving And they got hit by a telephone pole No, he hit a telephone pole Yes, Your Honor I apologize He hit a telephone pole But he did not have the permanent intent Or the intent to permanently deprive Because he was going to give the car back So similarly, if we knew exactly what Mrs. Stewart's intent was And if she was going to take the files She had to look at them for something And then give them back Then, just by a legal definition That would not be burglary Because she would not have the intent to permanently deprive The other thing with this intent is that It cannot be proven just by conjecture or speculation It's an element the State has to prove Also, going back to People v. Heisig It said that restitution may be relevant To show the absence of intent To deprive the owner permanently of his property So, the fact that the specific restitution She gave all the files back within two days Is relevant in showing that she never had the intent To take it in the first place Now, the State addresses this by arguing multiple times That she only returned it because of this threat of legal sanctions That it was only because there was this warrant of arrest out for her However, there's no proof anywhere that she knew That she was about to be arrested Because she didn't have that She wasn't even home She left the files in a box, ready to give back When Officer Cade came to her house Her husband handed her the box of files So, the cause and effect isn't there And the State even argues that Mrs. Seward was principally motivated by the threat of legal sanction However, I would argue that The only direct threat of legal sanction That Mrs. Seward had in this case Was when Cade told her she would be arrested for trespass If she went back to the daycare center And that testimony didn't come in But how do we know that that, in fact, happened? Did the officer somehow... Yes, Your Honor, the officer wrote that in his report Word for word I don't believe that is in dispute That is not in dispute, good At least as far as I know But the officer wrote that in his report That he said that So, Your Honor Ultimately, this is a case that Comes down to poor communication Like I said, it's not a criminal intent Or a criminal mindset She took files and... I don't have time Thank you, Your Honor Thank you You'll have the opportunity for rebuttal And, Mr. Miller First, let me apologize, obviously You don't represent the defendant Thank you, Your Honor In this case I'd like to ask you Something that kind of I find unusual In the fact that Both the complaining witnesses here Asked that this not proceed Yes, Your Honor And, apparently Obviously, it's the State's discretion But I found that unusual Can you respond to that at all? Was there something else that was involved? That perhaps... What I would say to that, Your Honor Is that the State was attempting to Basically protect the property rights Of Horizon Child Care Center Now, although the property was eventually Returned to Child Care Center The act of burglary took place Before any of that was determined I understand But the other thing that I found curious Was that the items that she had returned Were a DCFS book Which I take it You could probably just go to the DCFS It wasn't any type of information That appeared to be private To the daycare Your Honor, that would be the That would be the files that were last returned However, the files which were initially taken They weren't exactly We're not exactly sure The entirety of the files that were taken So, we just know for a fact that Well, I thought that the complaining witnesses Said that everything was It appeared to be there after the second The second group was returned Yes, Your Honor But the State is arguing that The crime was committed When the defendant took all the files initially Okay So, you still think that there was an intent To permanently deprive When she brought back The first group of files Yes, Your Honor Okay Did they have to prove any value in the files? No, that is not an element of this offense So, the defendant had to prove Or the State rather had to prove That the defendant knowingly Without authority Entered the premises of Horizon Child Care Center I thought she was already in the premises When she was let go So, that was She didn't She wasn't there She was on her way out She came back She came back I know So, that's They're not charging her with Only at the time she came back And she came back to return something? Right, so after she came So, she came back to return something But she wasn't charged with taking something out But she was charged when she tried to return it Is that what they're saying? No, Your Honor So, she's being charged With the initial taking of the files But she was allowed to be in there So, how is that So, she was not allowed This is after her termination So, she was charged She was not in there When she first took the files I mean, she was not terminated Or was terminated She was terminated When she first took the files I see And you don't have to prove any value at all? No, there was no value Because, my question There is no case that has to do with value If anything is on the Internet, is there? No, Your Honor There was nothing mentioned in the briefing Or that came up at issue in this case But was there any Kind of along those same lines Was there any I know that Zimmerman told her That if there was anything that she wanted I understand the boy, she was probably upset When she was let go But when he I think the wording was something like Let us know if there's anything that you forgot Or want to come back and get But was there anything beyond that That he said that made it clear to her That she was not allowed again on the property To get her own belongings Or what she viewed as her own belongings Yes, Your Honor Because the testimony One of the witnesses Says that when the defendant first came back To take the files That she knew the defendant Was not allowed to be there So, whether it was the pastor Or whether it was her And the new director came together It was known to most of the employees That the defendant was not allowed And the defendant also knew That she was not allowed Now, that is just Did they not charge the crime of trespass Or did they? No, the record does not reflect That she was charged with crime of trespass Okay, and how was it You say that they knew amongst themselves That she wasn't allowed back on the property And what do we have What evidence was there That she was So, we had testimony Given that information as well I apologize, Your Honor That's okay She had testimony from one of the employees Who said that So, initially As the defendant has argued So, she She texted her You know, one of their other employees And said that she Needed some of these files But she wouldn't explain why And so, the person she was texting Refused to get them obviously And after that She came in To the Horizon Daycare Didn't speak to anyone And she went back into the office And removed these files Now, there were At least two employees Who saw her as that happened One of those employees Testified at trial That she knew That she wasn't supposed to be there The other person Indicated that he was surprised To see her Because he knew That she'd been fired And certainly That it would be Unusual practice For someone Who had been terminated To have access To these files Without, you know Going through any Of the authority there Without asking anybody Without even telling anyone That they were present The only way That we knew That she was present Was that people In fact saw her But she didn't speak To anybody Which is rather unusual The defendant argues That there's always An intent to return The property Because the defendant Placed the files In a box To be returned So there's no evidence For us to show That the defendant Prepared these files The defendant did not Have the files prepared At the first visit By Officer K So when Officer K First showed up At her house On the 20th And told her That she was now Allowed to return To Horizon Child Care Center And inquired About the files The defendant said I didn't take anything That wasn't mine So the state argues That this is What could infer To a rational trial That this is in fact An intent to Permanently deprive That she believed That what was in her possession Was hers And that she had No intention of returning it Now the defendant argues That the state Doesn't consider That since she was told By the police officer She couldn't return What should she do With the files She knows that she's not Supposed to have them And she can't return The state doubts this claim Because Officer K Was at her home He was telling her That she wasn't allowed To be there If her intention Was to return the files And they were ready to go Why weren't they turned over To the state For the first instance Well I want to go back And dive in a little deeper On what you just said About her statement That she Everything that she took Was her own property And again It was a DCFS book         And that was A DCFS book And that was A DCFS book And that was A DCFS book And that was A DCFS book And that was A DCFS book And what was The third thing But I mean They did not Appear to be Specific at all To the agency So I mean Was it possible That she thought They were hers Since they were Given to her Probably as part Of their employment Was that considered At all Your honor The state doesn't See how she could Have seen that The property was hers So the problem is That when the crime Was committed So she took The initial number Of files We aren't sure The total files That she took Because the defendant Said she came And returned Some of the files But the state Would argue That since we don't Have to show What exactly The files she took That we just know That they were Risen's property That her returning Some of the files Shows that she Didn't intend to Return the others Also she had Returned some of The files As the state After You know Before Officer Katie Came to her home And Officer Katie Returned Some of the files So she can't It doesn't seem That they could Both properly Exercise ownership Over these files Especially considering That she had Been terminated I have a question Did Were the files Then presented To the court At the trial These are the files She took Yes I believe Did anyone Then say Those are our files Horizon Child Care Said that they Were files Whose Horizon Is that some Person I'm sorry That is the daycare Where she worked She was terminated I know that But I mean When some person Testified That those are the Files Oh yes The director of Horizon Child Care Testified that they Noticed that the Files were missing I know that Slow down Are those the Files sitting on The desk there The files that Were returned Is that the question It is It is It was all the Files They were Ultimately returned Well I thought You just said That nobody Was sure If all the Files were Ultimately returned Well I was just Saying that No we are not Sure which Files were Ultimately taken Because some of  And ultimately All of them Were returned Okay So it is Unclear what She initially Took because She kind of At her leisure Returned some Of the files So the Defendant argues That some of The files were Returned before The police were Involved The state Can't see how This is possible Because Officer Cape went to Her home and Told her that She was not Allowed to go Back to Horizon Child Care and The files had Been reported Missing and The state Believes that This hesitancy That she showed In returning the Files that she Waited until Three trips Three trips Later So she didn't Return them Two days later Officer Cape Returns She is not Home and After that He returns at 10 p.m. That evening She is still Not home However the Files are in a Box and They are returned I think the Defendant Displayed nothing Except hesitancy And the way That she acquired These files That she Texted somebody And that She didn't Give a reason That when She entered The solution She didn't Speak to Anybody That this was Indictive of Her dubious Intent and The state Could only Show that A rational Trier of fact Could have Found this Intent to Permanently Deprive All the Evidence being Viewed in light Was favorable To the State I Think You can Finish your Thought Just that Even if the Defendant's Interpretation of The facts and Circumstances is Correct it would Have to show That the State's Interpretation Is irrational Thank you Thank you Mr. Miller Do you have Further Rebuttal Mr. Cohen Yes I want to Touch on Just to Clear up a Couple of Things if I Can. So first The state Mentioned About how The other Coworkers knew That she Wasn't supposed To be there And they said Some information About how The coworkers Were like Just knew That she Wasn't supposed To be there When she Returned but This was Drawn out At the Trial that They asked The coworkers Like did Someone tell you Don't let Mrs. Seward in and They said No we just Knew that she Got fired so This is just A common sense Thing they Knew Mrs. Seward got Fired and so When she Was there They were Surprised to See her Because they Knew she Was fired. It's Not as Though it's Never been Told Don't let Mrs. Seward on the Property. I also Want to talk About the Files because The state Is saying We don't Know which Files were Taken and Returned first Or which Ones were Second but We actually Do know Because this Came out at Trial I Believe it Was director Amber Durbin's Testimony Who said Exactly what Was missing Between the First and the Second time she Returned files. So what Was missing What she Took home With her Was the DCFS handbook Which could Be found Online and It was Teacher Forms for A program Called great Start and The co-workers Testified that Mrs. Seward was The only one Who was in The program. Those were The only files That don't have Any value and Of course it's Not an element but It does go Towards her Intent or More of a Common sense Argument of Why is someone Trying to Steal this Thing that Doesn't have Value. What else Was taken? Those were The only two Things that She kept. So originally She took a Stack of Files that There was A lot of Files and But she gave Those away and I guess She did what? Gave those away? She gave those Back. I'm sorry. I was just Going to say I have to Actually apologize Because you Asked me this During my first Time and I Said that this Was not in Dispute but Apparently it Is in Dispute from The state but That she Did return Files before The police was Ever involved. So I believe I guess going Through the record You'll be able to See that this Was clear that She did give Files back right Away before the Police was not Called until later When there was Still files missing And the police Went to her House later at Night. So she did Return files right Away and it Was only those Two files that She did not Return right away. So there is a Dispute over Whether or not She returned Files only after The police had Been to her House three Times. They keep saying Three times. The police were Involved three Times and then She returned Everything. But you're Saying that she Returned the First batch of The bulk of the Files on her Own before Anybody was Involved? Yes. Before any Police contact Occurred that She was aware Of? Yes, your Honor. I would even Point to the State's brief in Which they Incorporate this Into their Argument and They say that The fact that She returned some Of it but not All of it actually Shows that she Meant to keep the Other part. That was an Argument they Made. And the other Part, the part That she did Keep was the DCF handbook And the Reimbursement Yes, your Honor. Information. Yes. And I also wanted To speak to those Three trips. The first trip is When she was told It would be Trespassing if she Goes back. The second trip Was when her son Answered and she Wasn't there. The third trip is When her husband Answered and she Wasn't there and That's when the Files were given Back. Okay. So there was a Third one. Okay. I wasn't It's because there Were two of them With her son and Her husband. Right. But the first Her return Happened prior to Any contact. Her return Is the bulk of The files. Yes, your Honor. Okay. And the last Thing I want to Comment on is Just that the State mentioned That when she Went back she Didn't speak to Anyone and Called it rather Unusual. But this just Goes back to the Theme that this Is poor Communication and This is just Someone who Just walked in And out and Four or five Co-workers saw her Do this. She's not Trying to hide It. Okay. So there was No testimony From any of the People at the Program that You know she Was sneaking Around and They came Upon her and Saw her, that Type of thing. It was all Out in the Open. No. And the State called It was either Four or five People. So this Is not Someone who Is trying to Be discreet. So ultimately As I've been Saying this is Poor communication. This is Seems like Something of An awkward Situation. She didn't Want to Interact with The person Who had Fired her and Her co-workers. She could Have run About it Better but This is not Someone with A criminal Background who Wanted to steal These files. So I request that Her conviction be Overturned. Thank you, Your Honor. Thank you. Thank you, Mr. Cohen. Thank you, Mr. Miller. Both for your Briefs and arguments. We'll take the Matter under Advisement.